IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RONALD L. MALEK,

    Plaintiff,

vs.

Case No. 06-1340-JTM

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

MEMORANDUM AND ORDER

Plaintiff Ronald Malek has applied for Social Security disability insurance and supplemental security income benefits. His application was denied by the ALJ on July 25, 2006, a decision affirmed by the Appeals Council on October 10, 2006. There are four allegations of error by Malek, specifically, that the ALJ erred in (a) discounting the opinion of a treating source, (b) failing to base Malek's residual functional capacity (RFC) finding on substantial evidence, (c) finding that Malek's back pain was not severe, and (d) failing to make a correct Step Four analysis.

Plaintiff-claimant Malek has stated that he became disabled beginning June 12, 2004. He has previously worked as a tank washer and plastics worker. He has reported experiencing problems with anxiety, depression, and tremors. The detailed facts of the case, which are incorporated herein, are set forth in independently in the ALJ's opinion (Tr. 13-26), and the briefs of Malek (Dkt. No. 7, at 1-7), and the Commissioner (Dkt. No. 10, at 2-8).

The ALJ concluded that Malek suffered from anxiety, depression, dysthymia, an essential tremor, and had a history of alcohol or substance abuse. He determined that Malek's back and neck impairments were not severe. He determined that Malek retained the RFC to allow him to lift 50 pounds occasionally and 25 pounds frequently, sit for six to seven hours during a work day, and was limited to simple, repetitive work. (Tr. at 20).

The ALJ did not err in discounting Malek's subjective complaints of pain. The assessment of a claimant's credibility is for the ALJ. *Hamilton v. Secretary of HHS*, 961 F.2d 1495, 1499 (10th Cir. 1992). This court will not substitute its judgment as to a claimant's credibility, where that finding is founded on substantial evidence. *See Casias v. Secretary of HHS*, 933 F.3d 799 (10th Cir. 1991). Here, the ALJ agreed that given Malek's medical history, he would and did experience some degree of pain; he concluded, however, that Malek's statements as to the degree of pain were not credible.

In the present appeal, Malek contends that the ALJ erred in discounting the opinion of a treating medical source, Dr. Schell. With respect to Dr. Schell, the ALJ wrote:

> Dr. Schell issued a medical source statement — mental — giving the opinion that the claimant was markedly limited in performing many work tasks, especially those in the area of sustained concentration and persistence (exhibit 17F). As noted above, Dr. Schell also diagnosed brain damage. These opinions are not supported by Dr. Schell's objective findings which show that the claimant has average intellectual functioning and very low probability of brain dysfunction. Dr. Schell reported that the claimant's strengths were motor functions, rhythm and concentration, expressive speech, and arithmetic (exhibit 16F/128). As Dr. Schell's opinion is not supported by his objective findings, it has not been given controlling weight.

(Tr. at 23). The ALJ also found that the recommendations of Dr. Schell were inconsistent with Malek's daily activities:

>The claimant saw Dr. Schell from September 21, 2005 until February 14, 2006 (exhibits 12E/69; 16F). Dr. Schell administered estimated IQ testing and Luria Nebraska testing of brain damage. These revealed average intellectual functioning with low probability of brain dysfunction. The claimant had no limitations in the ability to perform his job duties at his former employment, including understanding and following directions, performing duties in a satisfactory and timely manner, staying on task with ordinary supervision, concentrating, getting along with coworkers, supervisors, or the public, learning new tasks within an acceptable amount of time, and maintaining attendance (exhibit 7E). Dr. Liebenau noted that the claimant had fair concentration, attention, and short term recall, with some impact from anxiety, but did not report any marked limitations. The claimant has been able to concentrate and persistent sufficiently to paint trim on houses, play horseshoes, provide a full range of care for his children, attend his children's games and practices, drive, and do construction work. Dr. Schell's primary objective was to assist the claimant in filing for Social Security disability benefits and to prepare .the claimant for a hearing, showing that Dr. Schell's opinion was not an impartial opinion based upon his objective findings. Dr. Schell's opinion is not supported by the findings of any other psychological sources and is not consistent with the claimant's daily activities or previous work performance. His opinion appears to be biased based upon his primary objective to help the claimant qualify for disability benefits. Therefore, Dr. Schell's opinion has not been given substantial weight.

(Id.)

In the present appeal, Malek argues that this assessment was erroneous, and cites a variety of evidence from the record which is consistent with mental difficulties — such as the indications that he had a low memory and low level of GAF functioning, the notes from the two evaluations by Dr. Liebenau showing that Malek appeared disheveled, stressed, and anxious, and the additional description by Dr. Schneider, who treated Malek for pain, as suffering from anxiety.  The court finds no error.  Although there is some evidence to corroborate that Malek had some functional restriction, it remains true that there is a marked contrast in the record between the severe brain damage described by Dr. Schell and an absence of underlying objective medical evidence to support such conclusions.  Dr. Liebenau's evaluations show that, except for limitations in short-term memory, Malek had no significant cognitive deficits.  Further, there is a contrast between the heavy

3

restrictions recommended by Dr. Schell and the actual activities Malek carried on in his daily life. Such reasonable evaluations and reconciliations of conflicting evidence and medical testimony are the legitimate province of the ALJ, *see Mosteller v. Bowen*, 702 F.Supp. 1534, 1537 (D. Kan. 1988), and the court finds no basis in the record to substitute its judgment for that of the ALJ.

Malek next argues that the ALJ's RFC evaluation was in error because the evidence relied upon by the ALJ was the evaluation of the medical consultant, and that evaluation was based solely on the medical records and was done before the MRI showing that Malek had degenerative findings in the cervical spine and neural foraminal narrowing at C3-4 on the right side, and ignores the fact that Dr. Schneider had prescribed Lortab for the back pain.

The court finds no error. The MRI results cited by the claimant indicate only mild findings and are not inconsistent with the medical records generally. Contrary to the suggestion of the claimant, the ALJ's opinion does not rest solely with the consultative evaluations themselves. The ALJ noted that while the consultants did not independently examine Malek, "they provided specific reasons for their opinions about the claimant's residual functional capacity showing that these opinions *were grounded in the evidence of record*, including careful consideration of the objective medical evidence and the claimant's allegations regarding symptoms and limitations." (Tr. at 24) (emphasis added). The RFC determination by the ALJ is not a rubber stamp of the consultative evaluation, but reflect a consideration of the record as a whole, and no error exists.

As noted earlier, Malek also contends that the ALJ erred in failing to determine that his back pain was a severe impairment at step two. At step two, a plaintiff has the burden of showing the existence of an impairment that effects his ability to work. *Morris ex rel. Feth v. Barnhart*, 326 F.Supp.2d 1203 (D. Kan. 2004). The impairment must be established by medical evidence, and must

4

place a significant limitation on the plaintiff's activities. *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997).

The court finds that the ALJ did not err in not including Malek's back pain as a severe impairment. The ALJ noted that in Dr.Schneider's "most recent treatment notes" that Malek "did not exhibit scoliosis or back pain." (Tr. at 14). The ALJ noted the results of the September 22, 2005, consultative evaluation noting that Malek

> had pain and reduced range of motion in the dorso lumbar spine, but straight leg raising was normal and there was no paraspinous muscle spasm. [Malek]'s motor functioning was coordinated and symmetrical. There were no reflex or sensory deficits. A resting tremor was noted, which seemed to wax and wane, but which stopped when [Malek] was doing tasks. There was no cog-wheeling. [Malek] could bend 14 inches to the floor and had no difficulty getting off and on the examining table, heel and toe walking, squatting, hopping, or arising from a sitting position.

(Tr. at 15.) When examined by Dr. Schwertfeger, Malek denied any problems in activities such as walking or rolling over in bed. (Tr. at 16.) Although as noted earlier, the MRI showed some mild degenerative changes, Dr. Schwertfeger concluded the MRI was "essentially normal." (Tr. at 293). The ALJ also noted the statement of Malek's former supervisor, which indicated that Malek had no problem in performing the requirements of his job until he was terminated June 14, 2004, for bringing alcohol to work. Finally, the ALJ noted that Malek's daily activities were extensive, being

> the sole caretaker of his 4 young children. The claimant leaves home independently and drives despite a revoked license. He has stated that he works around the house and yard and is always doing something. During the time that he is claiming inability to work, the claimant painted house trim, helped a friend tear down an house, and used a chainsaw.

(Tr. at 21. Exhibit references omitted.) Given the nature of the evidence, the court does not find that the ALJ erred in concluding that the back pain was not a severe impairment.

Finally, Malek argues that the ALJ's step four analysis is flawed because he failed to make specific findings as to the demands of Malek's past work as a plastics machine worker, and its relation to his current RFC. The court finds no error, since the opinion of the ALJ does in fact include a close examination of the nature of Malek's past work, an examination based on Malek's own description of the job. (Tr. at 25-26). Malek left the plastics machine worker job "for nondisability reasons — to provide childcare while his wife worked." (Tr. at 26). The ALJ found that demands of the former job, as described by Malek, were consistent with Malek's RFC. The court finds no error in the ALJ's evaluation at step four.

IT IS ACCORDINGLY ORDERED this 16th day of January, 2008, that the present appeal is hereby denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE